321 S.W.2d 822 (1958)
CITY OF ELIZABETHTON, Tennessee, et al., Petitioner,
v.
CARTER COUNTY, Tennessee, et al., Respondents.
Supreme Court of Tennessee.
December 12, 1958.
Rehearing Overruled January 23, 1959.
*823 Lodge Evans, Elizabethton, for petitioner.
Lewis Merryman, and Lloyd Shell, County Atty, and Banks, Street & Banks, Elizabethton, for respondents.
SWEPSTON, Justice.
This is a suit for a declaratory judgment under T.C.A. sec. 23-1101 et seq. The petitioners are, in addition to the City of Elizabethton, Peter W. Hampton, a citizen *824 and resident of Elizabethton, and the City Judge thereof. The respondents are, in addition to Carter County, the County Judge the County Attorney, the Criminal Judge for the First Circuit, the Attorney General for the First Judicial Circuit, the Judge of the General Sessions Court of Carter County, the Sheriff of Carter County and the Attorney General for the State.
Upon motion of the Attorney General for the State the proceedings were dismissed as to him, the matters involved herein not being of statewide interest and there is no appeal from such action of the court.
In the view we take of the matter, it will not be necessary to state at length or in detail the allegations of the petition, the contents of the demurrer filed by the respondents, and the action of the trial judge thereon. The petition avers verbatim the contents of Art. XII, Ch. 437, Private Acts of 1937, by the terms of which a municipal court for the City of Elizabethton was established. Sec. 1 of said article is as follows:
"Sec. 1. Be it further enacted, That there be, and hereby is, established a municipal court for said City of Elizabethton with full and exclusive jurisdiction of all cases and causes of action arising under the laws and ordinances of said City of Elizabethton.
"Said Court shall be, and is, clothed and vested with the power, authority, and jurisdiction of the office of Justice of the Peace, as to the violation of the criminal laws of the State of Tennessee within the corporate limits of the City of Elizabethton." (Emphasis ours.)
Section 2 then provides in substance that the court shall have power and authority to impose fines, costs and forfeitures, to punish by fine or imprisonment or both, for violation of city ordinances, to enforce the collection of such fine, costs, and forfeitures, and, in default of the payment of same or good and sufficient security given for same, it shall be the duty of the court to commit the offender to the workhouse or other place provided for such purpose to work out the fine, costs and forfeitures; provided that no fine or imprisonment shall exceed 90 days for one offense and no fine shall exceed $50 for one offense and that the City Judge may remit or suspend such fines and costs.
Section 3 provides for appeals to the Circuit Court.
Section 4 provides for the issuance of a warrant upon affidavit and that no arrests shall be made without a warrant except for an offense committed in the presence of the officer making the arrest or except in case of a felony.
Sections 5 and 6 provide that all fines imposed by the city for violation of city ordinances shall belong to the city and all labor performed in the execution of workhouse sentence shall be performed under the direction of the City Manager.
Section 7 requires the City Judge to keep a docket containing a detailed record of all cases handled.
Section 8 provides:
"Sec. 8. Be it further enacted, That the said City Court be presided over and held by the City Judge, elected by the Board of Commissioners.

"The City Judge shall be a person, who has attained the age of 25 years, of sound judgment, and some legal learning. However, the Board of Commissioners may, for reasons satisfactory to itself, designate the City Recorder to hold and preside over the City Court, with the title of City Judge and clothe and vest him with all the power and authority of City Judge." (Emphasis ours.)
The petition further alleges that under Ch. 333, Private Acts of 1943, a General *825 Sessions Court for Carter County is provided for and Section 2 provides:
"Sec. 2. Be it further enacted, That the Court of General Sessions is hereby vested with all the jurisdiction and shall exercise the authority conferred by the Legislature upon Justices of the Peace in civil and criminal cases, suits and actions; and the Justices of the Peace of Carter County are hereby divested of all such jurisdiction and authority. The authority of said Justices of the Peace in their capacity as members of the Quarterly Court or in the performance of the rites of matrimony is in nowise affected by this Act." (Emphasis ours.)
Then the foregoing quoted section was amended by Ch. 411, Private Acts of 1949, as follows:
"with the exception of the power and authority to issue criminal warrants and mittimi and fix bonds, the trial of defendants on such, however, to be had by the Judge of the Court of General Sessions. The Justice of the Peace issuing such criminal warrants and mittimi shall receive the same fees therefor as are now provided for the issuance of such papers." (Emphasis ours.)
The petiton alleges, then, that for a number of years the City Judge has exercised the jurisdiction of a Justice of the Peace in criminal cases arising within the City of Elizabethton and under violations of the State laws, he has from time to time bound parties to the grand jury for indictment. That the same has not been challenged until recently when the city has been plagued with habitual offenders charged with public drunkenness under State warrants; that the city has limited jail facilities and does not have capacity to detain offenders for any appreciable period of time, the result of which conditions the City Judge has bound these offenders to the grand jury for indictment in order that they might be committed to the County Jail to await the convening of the grand jury. That this action, however, has produced vociferous protest from the several county officials on the ground that it was imposing a hardship on the county.
The petition further alleges that, when the Criminal Court convened at its October Term 1957, indictments were returned against these offenders above mentioned, but that the County Attorney had successfully interposed plea in abatement and motions to quash indictments on the ground that the City Judge had no authority to act in the premises for the reason that said Act creating the General Sessions Court had deprived the City Judge of such authority.
The petition then avers in short that this conflict has greatly impaired and crippled the effectiveness of law enforcement within the city because it does not have ordinances applicable to many types of criminal offenses and the City Judge does not know whether he can issue a State criminal warrant, the policemen do not know whether they can arrest for violation of the State laws and the Sheriff asserts that he can not receive a prisoner from a City Policeman for incarceration in the County Jail when such prisoner is charged with violating a State law unless the policeman has a mittimus signed by the General Sessions Judge. Other details of the confusion and uncertainty are averred.
In short, the city insists that the General Sessions Act did not deprive the City Judge of his right to act in the premises within the power and authority of a Justice of the Peace, whereas the county insists that such authority was repealed and nullified by the General Sessions Act. The prayer was for a declaration of rights with respect to the many questions raised.
The respondents filed a lengthy demurrer, of which only certain grounds need *826 be stated. The second and third grounds are that petitioners are not entitled to a declaratory judgment because it shows on its face there is no bona fide controversy between the parties and there is no party with any real interest in the subject matter.
The seventh ground is that the quoted statutes show that the City Judge has been divested of the authority of a Justice of the Peace of certain criminal jurisdiction.
The twelfth ground is, because the petition shows that the City Court, as a corporation court, is limited to the trial of city ordinances within the corporate limits of Elizabethton and is not a special or County-wide Court, and its Judge is appointed by the City Commissioners, and is not an elective office, city-wide or county-wide.
The trial judge made a full declaration of rights as the matters were presented to him by respective counsel at that time. It will not be necessary to state same, however, as will appear from what is said hereinafter. Both petitioners and respondents have appealed and assigned error. Petitioner alleges that the court erred in holding that said City Judge was divested of all his previous trial authority of a Justice of the Peace by the enactment of the said General Sessions Act for Carter County. The respondent assigns as error the action of the trial court in entertaining the bill as a proper one for a declaratory judgment. The other ground is not material to our disposition of the case.
We are of opinion that the trial judge was correct in entertaining the bill as one for a declaratory judgment. There was a bona fide controversy, there were parties having a real interest above and beyond the interest of the public generally and the rights of the parties depended upon the construction of the involved statutes. This comes within both the letter and the spirit of T.C.A. § 23-1103.
The cases cited by respondent are to be easily distinguished. In General Securities Co. v. Williams, 161 Tenn. 50, 53, 29 S.W.2d 662, 663, it is said:
"On the contrary, it is conceded in the brief that these United States bonds were acquired after the period mentioned and therefore the income from such bonds was not included in the aggregate of the earnings of complainant by which the 1928 excise tax was measured."
In Joyner v. Priest, 173 Tenn. 320, 117 S.W.2d 9 (an action to obtain a declaration on the Crime Commission Act, Ch. 13, Third Extra Session 1937), there was sought a declaration of future rights and obligations but no controversy had yet arisen.
Respondents' assignment is therefore overruled.
Respondents in replying to the insistence of the City of Elizabethton under its assignment of error that the General Sessions Act of 1943 did not affect in any way the criminal jurisdiction conferred upon said court by the 1937 Act creating same, raises for the first time the question of the constitutionality of said Act of 1937 creating said corporation court. It is said to be violative of Art. VI, Sec. 4 of the Constitution of this State, which requires that judges of the Circuit and Chancery Courts and of the other inferior courts shall be elected by the qualified voters of the district or circuit in which they are to be assigned, whereas said Act creating said municipal court vesting the judge thereof with the powers of a Justice of the Peace in criminal matters provides for the election of said Judge by the Board of City Commissioners but does not provide for his election by the qualified voters of the city.
Before treating this question of unconstitutionality, we respond to the insistence of the petitioner that the constitutionality *827 of a statute can not be raised for the first time on appeal.
It is, of course, a general rule that questions not raised in the trial court will not be entertained for the first time on appeal. Supreme Court Rule No. 14(5). That is also true with a great many situations where a constitutional question is raised. For example, as pointed out in Williams v. Realty Dev. Co., 161 Tenn. 451, 453, 454, 33 S.W.2d 64, where a litigant as a condition precedent to his right to attack the constitutionality of a statute on the ground that it confers a special privilege upon an individual or class must show himself to be adversely affected; his right may, therefore, often depend upon proof that the litigant falls within the class discriminated against.
Yet there are many situations where that rule will not be applied. In Frazier v. Elmore, 180 Tenn. 232, 242, 173 S.W.2d 563, 566, it was said:
"And, too, while it is true that the rules of this Court provide that all questions presented to this Court shall have been raised in the trial Court and relied on in the assignments of error, this limitation is not binding upon this Court acting on its own motion, when the constitutionality of statutes are involved, or when this Court conceives that equitable considerations, apparent on the face of the record, forbid a complainant from maintaining a suit. In every such case the Court will assert, on its own motion, its obligation to deny the use of the Court. These principles are fundamental. Appellate Courts have broad discretionary powers in such matters of practice. * * *"
See also Langford v. Vanderbilt University, 199 Tenn 389, 404, 287 S.W.2d 32.
We do not have any sympathy for the practice of raising constitutional questions for the first time on appeal, unless a statute is so obviously unconstitutional on its face as to obviate the necessity for any discussion. That is not the situation here. In fact, we think it is obvious that the Act of 1937 is not unconstitutional in respect to the question of the appointment of the City Judge through the process of the so-called election by the Commissioners. The only authority cited by respondents is State ex rel. Haywood v. Superintendent, Davidson County Workhouse, 195 Tenn. 265, 259 S.W 2d 159. That case is not in point. The statute there conferred authority on the Mayor and City Council of Nashville to create the Court of Juvenile and Domestic Relations and failed to provide for his election by the qualified voters of the district. It authorized that court to enforce the criminal laws of the State affecting juveniles. The Act clearly violated Art. VI. Secs. 1 and 4 of the Constitution because it was an attempt to set up an inferior court, the judge of which would have a term of office of eight years, the same as all other inferior judges provided for by said provisions.
That opinion, however, recognizes that there may be a corporation court as part of the governmental machinery of a municipality and Art. VI, Sec. 1 in part states:
"The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary."
It will be observed, however, that nowhere in Art. VI, providing for the judicial department of the State, does the Constitution provide or require that the judge of a corporation court shall be elected by the people nor does it make any provision as to the length of the term of office, whereas in the case of the Supreme Court and inferior courts mentioned the term is eight years and under Art. VI, Sec. 15 the term of justices of the peace is fixed at six years and it is required that they be elected by the people.
*828 Then Art. VII relates to State and County officers but not to municipal officers. It is a well known fact that the terms, if any, of city judges may be fixed in accordance with the wishes of the Legislature. For instance, the term of the City Judge in the City of Memphis is four years; however, the charter does provide for the election of the City Judge by the people.
It is hardly necessary to cite authority for the statement that municipal governments are instrumentalities of the State for purposes of local government and the Legislature has absolute control within constitutional limits of the creation, modification and abolition of municipal governments.
In Smiddy v. City of Memphis, 140 Tenn. 97, 104, 203 S.W. 512, 514, it is said:
"It is sufficient for us to say that, so far as our cases are concerned, there has never been a doubt in this state of the power of the Legislature to do all acts not forbidden by the state Constitution, or the Constitution of the United States, expressly or by necessary implication. The doctrine of implied local selfgovernment which would defeat an act of the Legislature in regulating or abolishing municipal charters is repudiated in the Luehrman Case [Luehrman v. Taxing Dist., 2 Lea 425], and is contrary to the following cases in addition: Prescott v. Duncan, 126 Tenn. 106, 148 S.W. 229; Jackson v. Nimmo, 3 Lea 599; Malone v. Williams, supra [118 Tenn. 425, 103 S.W. 798]; and other cases cited above."
Also, it is established that a city may act directly or through the power conferred on a municipal corporation. Smiddy v. City of Memphis, supra; Bean v. City of Knoxville, 180 Tenn, 448 450, 451, 175 S.W.2d 954, 955, in which latter case it is said:
"The State may, and sometimes does, prescribe in what mode or manner a municipal corporation shall exercise its powers."
There being no constitutional requirement that the Judges of corporation courts, whether they be called police court judges, recorders, the mayor of the city, or what not, be elected by the people of the municipality, it is necessarily true from the nature of municipalities that the legislature may directly provide for either the election or the appointment of same or it may confer the power upon the municipality. As one example, T.C.A. § 6-2102 provides that a city manager is to appoint the recorder.
We think it did not change the situation at all when the Act of 1937 provided that the city judge or the recorder, as the case might be, should be vested with the power, authority and jurisdiction of a justice of the peace in regard to the violation of criminal laws of the State of Tennessee within the corporate limits of the City of Elizabethton. The conferring of this limitated power of a justice of the peace upon the city judge or recorder did not convert that official into a justice of the peace. See Duncan v. Rhea County, 199 Tenn. 375, 384, 287 S.W.2d 26.
The same situation existed in Moore v. State, 159 Tenn. 468, 19 S.W.2d 233, and was held valid. It is true that no question of the constitutionality of the statute was raised although the charter of the Town of McKenzie involved in that case provided for the appointment of a police judge by the mayor subject to confirmation by the council and conferred on him the powers and functions concurrently with the justices of the peace in the city. The opinion called attention to the sections of the Code conferring original jurisdiction of criminal cases upon justices of the peace, recorders of towns, etc., and declaring recorders to be magistrates within the corporate limits of towns where they hold office. The present *829 sections are T.C.A. §§ 16-101, 38-301, 40-114, 40-603, 6-217, 6-2119.
It is our opinion, therefore, that there is no merit in the attack on the constitutionality of said Act of 1937.
We come now finally to the question of whether the Act of 1943, creating the General Sessions Court for Carter County, repealed by implication that part of the said Act of 1937 which vested in said municipal court of the City of Elizabethton the power, authority and jurisdiction of the office of Justice of the Peace as to the violation of the criminal laws of the State of Tennessee within the corporate limits of said city.
The trial judge was of opinion that said General Sessions Act of 1943, as amended in 1949, divested all magistrates including the Municipal Judge of the City of Elizabethton, of all power and authority to hear criminal cases, but left the power in the said magistrates and said City Court to issue criminal warrants, mittimi, and set bonds returnable for trial only before the General Sessions Court and that the City Court does not have the power to hear a State case or to bind the defendant to the Carter County grand jury.
The trial court was of the further opinion that "an additional burden would be cast upon the defendants if the City Judge could bind the defendant over to the grand jury in that a defendant would be deprived of his right to waive indictment and trial by jury before the General Sessions Judge as provided by Ch. 267 of the Public Acts of 1955", since in this connection the defendant has in the General Sessions Court a less expensive and more speedy remedy in having his case disposed of before the General Sessions Court on a plea of guilty and waiver of indictment, which defendants enjoy in other sections of Carter County.
With deference to the able Trial Judge and with an awareness of the desirability of the result reached by him insofar as the officials of Carter County are concerned, we are nevertheless unable to find a repeal by implication in the above mentioned statute. In the first place, the City Judge or Recorder is not a Justice of the Peace but there was conferred upon that Court simply one of the numerous powers of a Justice of the Peace. As we said in Duncan v. Rhea County, supra, such action did not make the City Judge a Justice of the Peace.
Secondly, the Act of 1943 setting up the General Sessions Courts does not refer to any other office except that of Justice of the Peace and the numerous powers and duties of such Justices is too well known to be detailed. It would seem that if the intention of the legislature had been to affect any other than Justices of the Peace, it would have been very simple to include by broad language all other magistrates exercising any of the powers of a Justice of the Peace, except as specified.
Third, it seems to us that it is a rather well known fact that the idea of creating General Sessions Courts throughout various parts of the State, by which Justices of the Peace were deprived more or less of their civil and criminal jurisdiction, was the result of a belief that the General Sessions system would be a more efficient administration of justice, especially with regard to the elimination of the operation of the fee system by the placing of the Sessions Judges on a salary basis.
Fourth, when the Legislature conferred this limited power of a justice of the peace on the City Judge or Recorder of this city, it must be assumed that it was deemed advisable to do so for some reason sufficient unto the Legislature, such as perhaps the fact that Elizabethton was a municipality as distinguished from a rural community or sparsely populated area.
Fifth, it may be assumed that same reason accounts for the fact that the Act of 1943, as amended, did not expressly refer to the City Judge of Elizabethton.
*830 Sixth, as between the City Court and the Sessions Court, there is simply a concurrence of jurisdiction with a limitation on the City Court under T.C.A. §§ 40-407 to 40-412 to the trial of small offenses where the maximum punishment does not exceed $50 and where no imprisonment may be inflicted; otherwise under T.C.A. sec. 40-416, the City Judge may not try the case but is limited to binding the defendant over to the next Circuit or Criminal Court. At the same time the General Sessions Court is given an enlarged jurisdiction to impose a fine of not in excess of $50 but to impose a jail sentence not to exceed 11 months and 29 days under the conditions provided by T.C.A. § 40-118 et seq. Ch. 267, Public Acts of 1955. See Cates v. State, 198 Tenn. 270, 274, 279 S.W.2d 262.
In 22 C.J.S. Criminal Law § 119, p. 193, it is said:
"A statute conferring on a court jurisdiction of an offense of which another court has jurisdiction merely confers concurrent jurisdiction on the former and does not take away the jurisdiction of the latter, unless it is apparent that the statute intends to confer exclusive jurisdiction."
In Note 4 is cited among others: McCracken v. State, 146 Ark. 300, 227 S.W. 8, 10.
Under the Constitution (1874) Art. VII, Sec. 40, Justices of the Peace were clothed with "such jurisdiction of misdemeanors as is now, or may be, prescribed by law."
A statute, Kirby's Digest, sec. 1758, provided that one who should obstruct a public road "shall be guilty of a misdemeanor and liable to indictment in the circuit court of the proper county." Held, that statute did not vest exclusive jurisdiction in the circuit court.
State ex rel. Derrick v. Hawkins, 199 Ala. 121, 75 So. 237, is abstracted as follows:
"A statute reestablishing a court and conferring certain jurisdiction and repealing all laws in conflict therewith does not repeal an act conferring certain jurisdiction on another court, where the two courts do not generally occupy the same field, although there is a partial concurrence of jurisdiction."
Then under § 126 of 22 C.J.S. of the same text are abstracted two cases in which the jurisdiction was concurrent, even though one court could assess a greater penalty than the other. Harlan v. State, 190 Ind. 322, 130 N.E. 413; State v. Friedlander, 141 Wash. 1, 250 P. 453.
Another case cited under § 119, note 4 of 22 C.J.S. supra, is State v. Fischer, 175 Wis. 69, 184 N.W. 774, 775. There, the Constitution, art. 7, § 8, vested the circuit court with general original jurisdiction of all civil and criminal matters within the state, not excepted by the Constitution, and not hereafter prohibited by law.
A subsequent statute vested "the municipal court of Kenosha county" with concurrent jurisdiction "of crimes and misdemeanors arising in said county, wherein the maximum penalty does not exceed five years in the state prison." Laws 1909, c. 18, § 3.
Held, no repeal of the circuit court jurisdiction by implication.
The going back to 16 C.J. 150, Sec. 173, note 53, 22 C.J.S. Criminal Law sec. 119, we find that this situation of concurrent jurisdiction with a difference in the penalty that may be inflicted by the two respective courts is "old hat".
State v. Perry, 64 N.C. 598, and State v. Johnson, 64 N.C. 581, are interesting. They hold that in certain offenses specified by the statute, the party injured in person or property has an election to prosecute the offender in either the justice of the peace court where the punishment is limited to a maximum fine of $50 and one month imprisonment, or, if he thinks a *831 more severe penalty is appropriate for the offender, in the superior court.
In Hankins v. People, 106 Ill. 628, 637, defendant was indicted and convicted under Section 127 of the criminal code for gaming and was fined $250. The statute provided for a minimum fine of $100 for the first offense; $500 fine and six months in the county workhouse for the second offense; and for a third offense $500 fine and one to five years in the state penitentiary.
On appeal it was urged that the circuit court did not have jurisdiction because the above section was repugnant to Section 381 of the criminal code which provided:
"Original jurisdiction in all cases of misdemeanors, where the punishment is fine only, and the fine does not exceed $200, is conferred upon justices of the peace."
Held, (1) no language to indicate exclusive jurisdiction intended, and (2) such intention would have been violative of the constitutional provision vesting in the circuit court original jurisdiction of all causes in law and equity.
Such appears to us to be the analogous situation before us now.
Therefore, there does not seem to be a conflict between the statutes in the instant case.
And last, repeals by implication are not favored. The subject is fully dealt with in Memphis St. R. Railroad Co. v. Byrne, 119 Tenn. 278, 335, 337, 104 S.W. 460, and need not be repeated here.
For the foregoing reasons, we are of opinion that the Act of 1943 did not effect a repeal of the charter provisions of the Act of 1937 conferring upon said City Judge the power and authority of a Justice of the Peace as to violations of criminal laws within the city.
The judgment below is accordingly modified and as modified is affirmed.
TOMLINSON, JUSTICE, dissents.
TOMLINSON, JUSTICE (dissenting).
Tennessee, acting through its General Assembly, created the office of City Judge of Elizabethton and said to such Judge in substance "I am going to make you a Carter County Justice of the Peace to the extent of offenses committed against the State (not against the City) within the territorial limits of Elizabethton".
Subsequently Tennessee, through its Legislature, created the General Sessions Court of Carter County. Therein it added to, in certain respects, and subtracted from in other respects, the powers and jurisdiction of the Justices of the Peace of Carter County. The majority opinion says that such action of the Legislature had no effect upon the jurisdiction of that Justice of the Peace who in Elizabethton is its City Judge. I am unable to follow that reasoning. It seems to me to follow as night follows day that when the Legislature changed the jurisdiction of the Justices of the Peace of Carter County such change automatically had the same effect upon that particular Justice of the Peace of Carter County who held his office as such because he was the City Judge of Elizabethton.
Moreover, any other conclusion seems to me to create an anomaly. For instance, if within the City of Elizabethton an individual is charged with violating the State law of transporting more than a gallon of whiskey he can waive indictment and a trial be had and punishment, if any, inflicted by the General Sessions Judge provided the warrant is issued by, and returnable to, the General Sessions Judge.
On the other hand, if the person swearing out that warrant should apply to that Justice of the Peace who is the City Judge, then that official is without authority to do more than bind him over to the grand jury if the evidence points to guilt. I am unwilling to attribute to the Legislature *832 an intention to creat such an anomalous and contradictory situation.
For the reasons stated, I feel that I must respectfully dissent.

On Petition to Rehear
SWEPSTON, JUSTICE.
The petition to rehear filed in behalf of Carter County, et al., is respectfully overruled, as it presents no new matter of law or fact that was overlooked or not considered when the original opinion was prepared.